1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOSE ANTONIO MARTINEZ,                Case No.  1:20-cv-00555-HBK

12              Plaintiff,                 OPINION AND ORDER TO REMAND CASE
                                           TO COMMISSIONER[2]
13        v.
                                           (Doc. No.  14)
14   KILOLO KIJAKAZI,[1]
     COMMISSIONER OF SOCIAL
15   SECURITY

16              Defendant.

17

18

19

20        Jose Antonio Martinez ("Plaintiff") seeks judicial review of the final decision of the

21   Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for

22   supplemental security income under the Social Security Act.  (Doc. No. 1).  The matter is

23   currently before the Court on the parties' briefs, which were submitted without oral argument.

24   (Doc Nos. 14, 15, 17).  For the reasons stated, the Court orders this case REMANDED for further

25   administrative proceedings.

26   _____
     [1] This action was originally filed against Andrew Shaw in his capacity as the Commissioner of Social
27   Security.  (*See* Doc. No 1 at 1).  The Court substituted Kilolo Kijakazi, who has since been appointed the
     Acting Commissioner of Social Security, as the defendant.  *See* Fed. R. Civ. P. 25(d).
     [2] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C.
28   §636(c)(1).  (Doc. No. 18).

## I.      JURISDICTION

Plaintiff filed for supplemental security income on September 15, 2016.  (AR 172-77).

Benefits were denied initially (AR 64-77), and upon reconsideration (AR 102-04).  Plaintiff

appeared before Administrative Law Judge Ruxana Meyer ("ALJ") on January 7, 2019.  (AR 41-

63).  Plaintiff was represented by counsel and testified at the hearing.  (*Id*.).  The ALJ issued an

unfavorable decision on March 15, 2019 (AR 16-34), and the Appeals Council denied review on

February 19, 2020 (AR 1-3).  The matter is now before this Court pursuant to 42 U.S.C. §

1383(c)(3).

## II.      BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's

decision, and the briefs of the Plaintiff and Commissioner.  Only the most pertinent facts are

summarized here.

Plaintiff was 30 years old at the time of the hearing.  (AR 43).  Plaintiff testified that he

graduated from high school but was in special education from fourth grade through high school.

(*Id*.)  Plaintiff has no work history.  (AR 45).  Plaintiff spends his time playing video games and

testified that he can spend up to 16 hours a day playing video games.  (AR 47-48).  For exercise,

Plaintiff will sometimes walk up to five hours a day.  (AR 49-50).   Plaintiff testified that he is on

various prescription medications, including medications to treat his high blood pressure and lower

his triglycerides and cholesterol.  (AR 51).  Plaintiff explained that he likes to read but needs to

take a break every ten to fifteen minutes.  (AR 55-56).  Plaintiff regularly has to re-read

something from the beginning in order to understand it.  (AR. 56).

## III.      STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is

governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the

Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or

is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial

evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence

1    equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

2    citation omitted).  In determining whether the standard has been satisfied, a reviewing court must

3    consider the entire record as a whole rather than searching for supporting evidence in isolation.

4    *Id.*

5            In reviewing a denial of benefits, a district court may not substitute its judgment for that of

6    the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible

7    to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

8    2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is

9    harmless.  *Id.*  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

10   nondisability determination." *Id.* (quotation and citation omitted).  The party appealing the ALJ's

11   decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556

12   U.S. 396, 409-10 (2009).

13                  **III.    FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

14           A claimant must satisfy two conditions to be considered "disabled" within the meaning of

15   the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful

16   activity by reason of any medically determinable physical or mental impairment which can be

17   expected to result in death or which has lasted or can be expected to last for a continuous period

18   of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment

19   must be "of such severity that he is not only unable to do his previous work[,] but cannot,

20   considering his age, education, and work experience, engage in any other kind of substantial

21   gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

22           The Commissioner has established a five-step sequential analysis to determine whether a

23   claimant satisfies the above criteria.  See 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the

24   Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the

25   claimant is engaged in "substantial gainful activity," the Commissioner must find that the

26   claimant is not disabled.  20 C.F.R. § 416.920(b).

27           If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

28   two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20

C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## IV.   ALJ'S FINDINGS

The ALJ followed the five-step sequential evaluation process. At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since September 1, 2016, the application date. (AR 21). At step two, the ALJ found that Plaintiff had a severe medically determinable mental impairment, which was a history of learning disorder. (AR 21-22). The ALJ found the Plaintiff had a history of syphilis, sexually transmitted disease, herpes simplex virus, hypertension, asthma, and allergies but concluded these conditions did not impose a significant limitation on the Plaintiff's ability to perform work-related activities. (*Id.*). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 22-23). The ALJ proceeded to analyze Plaintiff's RFC and found that Plaintiff had the RFC "to work at all exertional levels (20 CFR 416.967), except he is limited to performing work that needs little or no judgment to do simple duties that may be learned on the job or in a short period of time." (AR 23). At step four, the ALJ that Plaintiff has no past relevant work. (AR 33). At step five, the ALJ found, considering Plaintiff's age, education, work experience, and residual functional capacity, that "there jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (AR 33). On that basis, the ALJ concluded that Plaintiff was not disabled, as defined in the Social Security Act, since September 1, 2016, the date the application was filed. (*Id.*).

## V.   ISSUES

The Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. (Doc. No. 1). Plaintiff raises the following issues for this Court's review:

1.   Whether the ALJ properly rejected Plaintiff's subjective complaints;

2.   Whether the ALJ erred by failing to weigh the opinion evidence from Plaintiff's sister;

3.   Whether the ALJ properly rejected Dr. Damania's opinion; and

4.   Whether the ALJ properly rejected the opinion from Mr. C. Guzman, P.A.

## VI.    DISCUSSION

### A.  Plaintiff's Subjective Complaints

When evaluating a claimant's testimony regarding subjective pain or symptoms, an ALJ must conduct a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation marks omitted).  "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he alleged; he need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Finally, while the ALJ is not required to perform a line-by-line analysis of the claimant's testimony, the ALJ is still required to do more than offer "non-specific conclusions that

6

1  [claimant's] testimony was inconsistent with her medical treatment." *Lambert v. Saul*, 980 F.3d

2  1266, 1277 (9th Cir. 2020).  Additionally, when evaluating a claimant's testimony, "providing a

3  summary of medical evidence…is not the same as providing clear and convincing *reasons* for

4  finding the claimant's testimony not credible."  *Id*. at 1278 (quoting *Brown-Hunter v. Colvin*, 806

5  F.3d 487 at 494 (9th Cir. 2015)).  When considering plaintiff's symptom claims, the ALJ must

6  specifically identify the statements found as not credible, and the evidence that allegedly

7  undermines those statements.  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  "To

8  ensure that our review of the ALJ's credibility determination is meaningful, and that the

9  claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she

10  finds not credible, and then provide clear and convincing reasons, supported by the evidence in

11  the record, to support that credibility determination."  *Brown-Hunter*, 806 F.3d at 494 (finding the

12  ALJ did not specifically identify any inconsistencies between the claimant's testimony and the

13  record; rather, "she simply stated her non-credibility conclusion and then summarized the medical

14  evidence supporting her RFC determination.").  The ALJ may discredit plaintiff's symptom

15  claims because the symptom claims are inconsistent with plaintiff's daily activities.  *Molina v.*

16  *Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) *superseded on other grounds by* 20 C.F.R. §

17  404.1502(a); *see also Morgan v. Commissioner of the SSA.*, 169 F.3d 595, 600 (9th Cir. 1999).

18         Here, the ALJ found Plaintiff's "medically determinable impairments could reasonably be

19  expected to cause some of the alleged symptoms."  (AR 25).  However, the ALJ found that

20  "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these

21  symptoms are not entirely consistent with the medical evidence and other evidence in the record

22  for the reasons explained in this decision."  *Id*.  Specifically, the ALJ found as follows:

23         Based on my review of the entire record and the hearing testimony,
       I conclude the claimant's subjective allegations of debilitating

24       medical and mental conditions causing limitations that would
       preclude all work activity are not supported by the objective

25       evidence. His testimony at the hearing was not persuasive or
       consistent with the objective evidence such as the benign physical

26       examination findings throughout the record.  His activities of daily
       living are inconsistent with impairment related limitations that

27       preclude all work activity.

28  (AR 33).

In support of this finding, the ALJ gave a thorough summary of Plaintiff's medical history along with summaries of different examinations connected to Plaintiff's claim.  (AR 21-22, 25-32).  Plaintiff takes issue with the ALJ rejecting his subjective complaints by just summarizing his medical history and argues that the ALJ's summary does not provide clear and convincing reasons for discounting Plaintiff's subjective complaints.  (Doc. No. 14 at 13-14); *see Brown-Hunter*, 806 F.3d at 494.

The Ninth Circuit has consistently ruled that a summary of a claimant's medical history is not the same as providing clear and convincing reasons for rejecting a claimant's symptom testimony.  *See Lambert*, 980 F.3d at 1278; *see also Brown-Hunter*, 806 F.3d at 494.  Here, the ALJ's summary of Plaintiff's medical history, no matter how detailed, does not meet the standard required to provide clear and convincing reasons for rejecting Plaintiff's subjective complaints.  Additionally, the ALJ did not specifically identify what part of Plaintiff's testimony is not credible but instead gives general, nonexplicit reasons.  The ALJ correctly considered relevant medical evidence— "objective evidence such as the benign physical examination findings"— when evaluating Plaintiff's subjective complaints;" however, the ALJ does not specify what physical examinations are "benign" or what the ALJ considered in finding such physical examinations "benign."  (AR 33).  Here, the ALJ incorrectly discredits Plaintiff's subjective complaints solely because such complaints were not supported by objective medical evidence.  (AR 33); *see Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of claimant's pain and its disabling effects.") (citing 20 C.F.R. § 404.1529(c)(2); *see also Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 2001); *see also Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).

Defendant attempts to identify which physical examinations were benign by listing multiple references to the record.  (Doc. No. 15 at 9).  This Court must evaluate the ALJ's decision with the reasons provided in her order and is not permitted to consider reasoning not offered by the ALJ in her decision.  *See Lambert*, 980 F.3d at 1278 (ruling that the district court

8

could not fill in the ALJ's reasoning by citing portions of the record where reasonable inferences could be drawn because the credibility determination belongs to the ALJ, and courts are constrained to review the reasons the ALJ asserts); *see also Brown-Hunter*, 806 F.3d at 494; *see also Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 2009) (the Court "review[s] the ALJ's decision based on the reasoning and factual findings offered by the ALJ's decision based on reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."). The ALJ, not the Defendant, needs to specifically identify which physical examinations in the record are "benign." The ALJ did not specifically identify which physical examinations are "benign" and therefore did not provide clear and convincing reasons for rejecting Plaintiff's subjective complaints.

Here, the ALJ also rejected Plaintiff's subjective complaints because "[Plaintiff's] activities of daily living are inconsistent with impairment related limitations that preclude all work activity." (AR 33). While the ALJ can reject Plaintiff's subjective complaints because such complaints are inconsistent with his daily activities, she must still specifically specify what daily activities are inconsistent with Plaintiff's subjective complaints. *Morgan*, 169 F.3d at 600; *see Holohan*, 246 F.3d at 1208; *see also Brown-Hunter*, 806 F.3d at 494. Although the Defendant attempts to supplement the ALJ's reasoning by citing Plaintiff's video game hobby and ability to walk up to five hours a day, (AR 33); (Doc. No. 15 at 10), this Court's review is limited to only the reasons provided in the ALJ's decision. *See Lambert*, 980 F.3d at 1278; *see also Brown-Hunter*, 806 F.3d at 494; *see also Bray,* 554 F.3d at 1225. However, the ALJ did not cite which specific daily activities were inconsistent with Plaintiff's subjective complaints and therefore did not provide clear and convincing reasons for the ALJ to reject Plaintiff's symptom claims.

The Court concludes that the ALJ did not provide clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims. On remand, the ALJ must reconsider Plaintiff's symptom claims.

**B.  Ms. Anabel Martinez's Lay Witness Evidence**

Ms. Anabel Martinez, Plaintiff's sister, stated in a Third-Party Function Report that Plaintiff has difficulty concentrating for long periods of time. (AR 194, 206). Ms. Martinez

explained that the Plaintiff needs supervision when showering, does not know how to comb his hair, does not know how to shave, and needs to be told when to take his medicine.  (AR 196, 207-08).  Ms. Martinez did note that Plaintiff gets along well with authority figures.  (AR 200, 212).  Ms. Martinez' Third-Party Function Report generally was consistent with Plaintiff's First-Party Function Report.  (AR 194-214, 229-237).  The ALJ did, however, did note that Ms. Martinez also added that Plaintiff did not handle stress well and described his behavior as "childlike at times."  (AR 25).

Plaintiff takes issue with the ALJ rejecting Ms. Martinez's statement without providing germane reasons specific to her statements.  (Doc. No. 14 at 12-13).  Plaintiff argues the ALJ's vague assertions are not specific to Ms. Martinez's statements.  (*Id.*)  The ALJ acknowledged Ms. Martinez's Third-Party Function Report and briefly summarized her statements.[3]  (AR 25).  After explaining the content of Ms. Martinez's statements, to include stating it is similar to Plaintiff's First-Party Function Report, the ALJ otherwise fails to opine on the significance, if any, of Ms. Martinez's statement.  Thus, it is unclear what weight, if any, the ALJ assigned to Ms. Martinez' Third-Party Function Report.

When discounting the opinion of a lay witness, the ALJ must give germane reasons that are specific to each witness.  *Valentine v. Comm'r SSA*, 574 F.3d 685, 694 (9th Cir. 2009); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) (holding the ALJ, who incorrectly thought the lay witnesses repeated the claimant's complaints, wrongfully dismissed lay witness testimony for not giving germane reasons specific to each).  However, "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness."  *Molina*, 674 F.3d at 1114 (internal citations omitted).  Without giving germane reasons that are specific to Ms. Martinez's statement, the ALJ

---

[3] The ALJ cited Ms. Martinez's Third-Party Function Report, dated September 25, 2016, as Exhibit 3E and explains that it is nearly identical to Plaintiff's First-Party Function Report, dated September 25, 2016, as Exhibit 4E (AR 25).  The ALJ acknowledged Plaintiff's First-Party Function Report in the paragraph preceding her discussion of Ms. Martinez's Third-Party Function Report.  (AR 25).  While Ms. Martinez's Function Report may be similar to Plaintiff's, the ALJ incorrectly cited the wrong Function Report submitted by Plaintiff.  Ms. Martinez submitted two Third-Party Function Reports, Exhibits 3E and 4E, whereas Plaintiff submitted his First-Party Function Report on February 6, 2017. (AR 194-219, 229-237) (citing Exhibit 7E).

failed to properly reject Ms. Martinez's lay witness statement. *See Valentine*, 574 F.3d at 994; *see also Dodrill* 12 F.3d at 918-19.

Despite a lack of germane reasons specific to Ms. Martinez's statements, Defendant argues the ALJ properly rejected Ms. Martinez's statements because this case is like *Molina v. Astrue*. (Doc. No. 15 at 11). In *Molina*, the ALJ gave specific, clear, and convincing reasons rejecting the claimant's testimony. 674 F.3d at 1115. The ALJ stated that third-party witness statements factored into her rationale for the credibility determination. *Id*. at 1114. However, the ALJ did not give reasons for rejecting the third-party witness statements. *Id*. at 1114-15. In *Molina*, the court ruled that the ALJ committed a harmless error by not giving germane reasons for rejecting the third-party witness statements. *Id* at 1122. The error was harmless because the third-party witness statements did not describe any limitations beyond what was described by the claimant, which the ALJ discussed and properly rejected. *Id*. Therefore, the court reasoned that the ALJ's reasons for rejecting the claimant's statements also applied to the third-party witness statements. *Id*. Here, Defendant employs the same logic found in *Molina*, arguing that the ALJ properly rejected Plaintiff's subjective complaints, and because Ms. Martinez's Function Report is similar to Plaintiff's Function Report, the ALJ's reasons for rejecting Plaintiff's statements also apply to Ms. Martinez's statements. (Doc. No. 15 at 11). As a result, Defendant explains the ALJ properly weighed Ms. Martinez's opinion.

The case at hand is distinguishable from *Molina*. As discussed *supra*, the ALJ failed to give clear and convincing reasons for rejecting Plaintiff's subjective complaints. *Molina* requires the ALJ to properly reject the claimant's statements in order for those reasons to apply to third-party witness statements. *Molina*, 674 F.3d at 1122. Because the ALJ did not provide any legally sufficient reasons for rejecting Plaintiff's subjective complaints; there are not sufficient reasons for the ALJ to reject Ms. Martinez's opinions. In light of the need to reconsider Plaintiff's symptom claims, the ALJ must also reconsider the lay witness statements on remand.

**C.  Medical Opinions**

Plaintiff argues the ALJ erred by rejecting the medical opinions by examining physician, Dr. Rustom Damania and PA-C Guzman, a physician's assistant. (Doc. No. 14 at 6-11). There

are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id*. If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id*. (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). "[T]he ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence stating [her] interpretation thereof and making findings." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The ALJ's decision must be upheld where the medical "evidence is susceptible to more than one rational interpretation. *Andrews*, F.3d at 1039-40 (internal citations omitted). Only licensed physicians, certified psychologists, licensed optometrists, licensed podiatrist, and qualified pathologist are considered acceptable medical sources. *Molina*, 674 F.3d at 1111 n.2. (internal citations omitted). Physician's assistants are not entitled to the same deference as acceptable medical sources

because they are defined as "other sources." *Id*. at 1111. (internal citations omitted).[4]

## 1. Dr. Rustom Damania M.D.

The ALJ gave little weight to Dr. Damania's opinion that Plaintiff's "bronchial asthma and hypertension impose exertional limitations to medium work…" (AR 32). The ALJ explained her decision to give little weight to Dr. Damania's opinion because "the evidence confirms the [Plaintiff's] asthma is controlled and there are no documented complications of hypertension." The ALJ further pointed out that Plaintiff's treatment records "consistently document the [Plaintiff's] lungs as 'clear to auscultation' and his heart sounds exhibited regular rate and rhythm despite elevated blood pressure blood pressure readings on occasion" which was consistent with the time Plaintiff failed to take his blood pressure medications. *Id*.

Dr. Damania provided a consultative internal medicine examination report on January 3, 2017. (AR 306-312). Dr. Damania noted that the Plaintiff's chronic bronchial asthma is "fairly well-controlled." (AR 306). Dr. Damania conducted an examination of the Plaintiff which included checking his blood pressure. (AR 309). Plaintiff's lungs were checked and his breath was symmetric, there was no rhonchi or rales, and the expiratory phase was within the normal limits. (AR 309). Dr. Damania also found Plaintiff's range of motion within normal limits for his upper and lower extremities. (AR 310). Finally, Dr. Damania opined on Plaintiff's functional capacity:

> The claimant is a 28-year-old male. The claimant should be able to lift and carry 50 pounds occasionally and 25 pounds frequently. The claimant can stand and walk eight hours out of an eight hour work day with normal breaks. The claimant can sit eight hours out of an eight hour work day. No assistive device is necessary for ambulation. No postural limitations. No manipulative limitations. No relevant visual or communicative impairments.

*Id*.

Plaintiff argues that the ALJ did not give specific reasons for assigning little weight to Dr. Damania's opinion. (Doc. No. 14 at 11). Plaintiff takes issue with the ALJ's reasoning, explaining that "the ALJ failed to support the assumption that asthma, obesity, and hypertension

---

[4] Physicians' assistants are acceptable medical sources "only with respect to claims filed (see [20 C.F.R.] § 416.325) on or after March 27, 2017." 20 C.F.R. §416.902(a)(8).

1    would not warrant a restriction on heavy exertion to prevent triggering his asthma or episodes of

2    hypertension." *Id.*

3        "Where all or part of an examining physician's opinion is contradicted by other

4    independently derived evidence, the ALJ may reject all or part of such opinion by setting forth

5    specific and legitimate reasons that are supported by substantial evidence in the record." *Martin*

6    *v. Berryhill*, 2017 WL 1064653 *1, 18 (E.D. Cal. Mar. 17, 2017) (citing *Rollins v. Massanari*,

7    261 F.3d 853, 856 (9th Cir. 2001).  Specific, legitimate reasons supported by substantial evidence

8    in the record is needed for an ALJ to reject the opinion of an examining doctor.  *Andrews*, 53 F.3d

9    at 104.

10       Here, the ALJ provided specific, legitimate reasons explaining why she assigned little

11   weight to Dr. Damania's opinion explaining that "evidence confirms the [Plaintiff's] asthma is

12   controlled;" "there is no documented complications of hypertension;" "[t]he opinion is overly

13   restrictive given the treatment records which consistently document the [Plaintiff's] lungs as

14   'clear to auscultation' and his heart sounds exhibited regular rate and rhythm despite elevated

15   blood pressure blood pressure readings on occasion;" and "evidence also shows the [Plaintiff]

16   does not consistently take his blood pressure medications and readings were elevated on those

17   days, but not so elevated the physician suggested the [Plaintiff] seek emergent treatment."  (AR

18   32).  The aforementioned reasons provided by the ALJ are specific and legitimate reasons,

19   supported by substantial evidence for the ALJ to accord Dr. Damania's opinion limited weight.

20   *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (holding that the ALJ provided

21   specific and legitimate reasons to reject the opinion of plaintiff's treating physician by citing

22   findings from the treating physician's examination that stated plaintiff was not disabled; the

23   treating physician only prescribed a conservative course of treatment; and the restrictions

24   imposed by the treating physician were inconsistent with plaintiff's daily activities);  *Andrews*, 53

25   F.3d at 1041-42; *Tommasetti*, 533 F.3d at 1041 (holding that the ALJ provided a specific and

26   legitimate reason to reject the opinion of claimant's treating physician because such an opinion

27   was contrary to claimant's medical records); *Martin v. Berryhill*, 2017 WL 1064653 *1, 18 (E.D.

28   Cal. Mar. 17, 2017).

### 2. Mr. C. Guzman, P.A.

P.A. Guzman prepared three different medical opinions: a mental RFC questionnaire, a physical medical source statement, and a letter dated March 14, 2018 ("letter").  Plaintiff argued the ALJ erred when she rejected P.A. Guzman's opinion without providing a proper evaluation. (Doc No. 14 at 6).  Because Plaintiff did not distinguish which medical opinion provided by P.A. Guzman that the ALJ improperly rejected, this Court will consider the weight the ALJ gave to each medical source statement and the letter.

The ALJ must give germane reasons to discount the testimony of "other sources." *Molina*, 674 F.3d at 1111 (citing *Turner v. Comm'r of Soc. Sec*., F.3d 1217, 1224 (9th Cir. 2010) (internal citations and quotations omitted).  Check-off reports that do not contain any explanation of the basis for their conclusions may be rejected by the ALJ.  *Id*. at 13 (citing *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *see also Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).  "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  "An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion." *Ford*, 950 F.3d at 1155 (internal citations omitted).  "A conflict between a treating physician's opinion and a claimant's activity level is a specific and legitimate reason for rejecting the opinion." *Id*. (internal citation omitted).

### a. Mental RFC Questionnaire

On October 19, 2018, P.A. Guzman prepared a mental RFC questionnaire.  (AR 331-333). In the mental RFC questionnaire, P.A. Guzman assessed Plaintiff's mental abilities to function independently across four different mental ability categories: (i) mental abilities understanding and memory, (ii) mental abilities sustained concentration and memory, (iii) social interaction, and (iv) adaption.  (AR 331-332).  Each mental category had an applicable set of "sub-categories" that required P.A. Guzman to assess a more specific aspect of the Plaintiff's mental abilities.  *Id*.  P.A. Guzman checked the boxes to complete his assessment without providing any an explanation for

1    any of his responses for any of the four categories.  *Id*.  The mental RFC questionnaire also

2    included estimates that, due to his mental impairments, Plaintiff would be absent from work five

3    days or more per month and would be unable to complete an eight-hour workday five or more

4    days per month.  *Id*. at 333.  Finally, the assessment included the Plaintiff having an IQ of 54 on

5    the full scale and a description of having a borderline level of intelligence.  *Id*.  The Plaintiff was

6    diagnosed with anxiety and cognitive deficit by P.A. Guzman.  *Id*. at 331.

7         Plaintiff first argues the ALJ incorrectly rejected P.A. Guzman's mental RFC

8    questionnaire for finding that the limitations assessed by P.A. Guzman were inconsistent with

9    Plaintiff's daily activities.  (Doc. No. 14 at 7-8).  The ALJ explained that the degree of limitations

10   assessed by P.A. Guzman concerning Plaintiff's inability to concentrate were inconsistent with

11   Plaintiff's daily activities, including Plaintiff's video game hobby.  (AR 29).  Additionally, the

12   ALJ explained that P.A. Guzman did not provide any evidence supporting his assessment that

13   Plaintiff would be off task, miss work, or experience symptom interference with concentrating.

14   (AR 28).  The ALJ gave specific reasons to support giving no weight to P.A. Guzman's mental

15   RFC questionnaire by explaining that Plaintiff's daily activities were inconsistent with P.A.

16   Guzman's assessment.  (AR 28-29); *see Ford*, 950 F.3d at 1154-55.  The ALJ explained that

17   Plaintiff's ability to sustain concentration over extended periods of time while playing video

18   games was inconsistent with P.A. Guzman's assessment that Plaintiff would have difficulty

19   concentrating.  *See id*.

20        Second, Plaintiff argues that the ALJ erred by giving vague reasons to reject P.A.

21   Guzman's mental RFC questionnaire.  Besides citing the inconsistencies with Plaintiff's daily

22   activities discussed in the preceding paragraph, the ALJ also stated that P.A. Guzman's

23   assessment offered no evidence to support the limitations assessed to the degree Plaintiff would

24   be off task, miss work, or experience symptom interference with his ability to concentrate. (AR

25   28).  The ALJ correctly considered the fact that P.A. Guzman does not provide any explanation or

26   evidence to support his assessed limitations in the mental RFC questionnaire and uses this as

27   another germane reason to assign no weight to P.A. Guzman's mental RFC questionnaire.  (*See*

28   AR 29); *see also id*.  While the ALJ *did* give germane reasons for rejecting P.A. Guzman's

1    mental RFC questionnaire, the ALJ acted properly for rejecting P.A. Guzman's check-off reports

2    which contained no explanation for the bases of his conclusions.  See *Molina*, 674 F.3d at 1111;

3    (see also AR 331-332) (documenting where P.A. Guzman does not offer any explanation for his

4    responses on category I, II, and III).  Ultimately, the ALJ properly used multiple germane reasons

5    to discount P.A. Guzman's mental medical source statement.

6         The third argument Plaintiff presents is P.A. Guzman's mental RFC questionnaire

7    included the same test results from Dr. Murphy's objective test.  The ALJ explained that one

8    reason she assigned no weight to P.A. Guzman's mental RFC questionnaire was it included

9    unsubstantiated test scores which were not included with the mental RFC questionnaire or the

10   medical evidence of record.  (AR 29).  While P.A. Guzman's handwriting is difficult to read,

11   when asked, "what test(s) were used and when to determine [your patient's I.Q.]?"  (AR 333), he

12   responds: "Wechsler [Adult] intelligence test scale."  *Id*.  P.A. Guzman does not make any

13   reference to the test conducted by Dr. Murphy or even the date which Dr. Murphy conducted his

14   test.  The only similarity is P.A. Guzman reported the same performance and verbal score that Dr.

15   Murphy reported.  The ALJ is responsible for resolving ambiguities in medical testimony, and

16   here she was responsible for solving any ambiguity that was caused by P.A. Guzman's

17   unsubstantiated test results.  *See Andrews*, 53 F.3d at 1039.  Moreover, when the evidence is

18   susceptible to more than one reasonable interpretation, the Court must defer to the findings of the

19   ALJ.  *Burch,* 400 F.3d at 680–81.  Here, the ALJ reasonably discounted P.A. Guzman's opinion

20   because the test scores were not in the provider's record and were otherwise unsubstantiated.

21   (*See* AR 29).  As a result, the ALJ gave specific reasons supported by substantial evidence to

22   provide no weight to P.A. Guzman's mental medical source statement.

23        Plaintiff's fourth argument is that the ALJ improperly "rejected" P.A. Guzman's opinion

24   by relying on an untrue characterization of Plaintiff and his sister's statements about him getting

25   along well with others and having few difficulties with his personal care.  (Doc. No. 14 at 8).

26   Plaintiff details in the record evidence demonstrating that the Plaintiff has difficulty with tending

27   to his personal needs.  *Id*.  Plaintiff is partially correct in his argument that the ALJ

28   mischaracterized Plaintiff and Ms. Martinez's statements.  The ALJ *only* mischaracterized the

portion of the statements related to Plaintiff's inability to tend to his personnel needs.  (Doc. No. 14 at 8); (AR 194-214, 229-237).  The ALJ accurately characterized the portion of the statements where both Plaintiff and Ms. Martinez stated that Plaintiff gets along well with others.  *Id*. However, even if the ALJ erred in considering this piece of evidence, the overall findings were supported by substantial evidence.  *See Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

Plaintiff's last argument is that the ALJ improperly relied on Plaintiff's friendly and cooperative nature with medical providers as a reason to reject P.A. Guzman's mental RFC questionnaire.  (Doc. No. 14 at 8).  Plaintiff is correct that P.A. Guzman did not give an opinion as to whether or not Plaintiff would be uncooperative, unfriendly, or create conflict; however, even if the ALJ erred by improperly relying on this aspect of P.A. Guzman's mental RFC questionnaire, any such error is harmless because the overall finding was still supported by substantial evidence.  *See Carmickle*, 533 F.3d at 1162-63.

### b. Physical Medical Source Statement

On October 19, 2018, P.A. Guzman also prepared a physical medical source statement. (AR 334-37).  In the physical medical source statement, P.A. Guzman diagnosed Plaintiff with hypertension, hyperlipidemia, allergies, and anxiety but listed "none" under Plaintiff's symptoms. (AR 334).  P.A. Guzman opined that Plaintiff can also stand/walk for about four hours during an eight-hour workday with normal breaks and described Plaintiff's ability to twist, stoop (bend), crouch/squat, climb stairs, and climb ladders.  *Id*. at 335-36.  While P.A. Guzman stated that Plaintiff does not have significant limitations with reaching, handling, or fingering, he did indicate specific limiting percentages of time during an eight-hour workday which Plaintiff could use his hands, fingers, and arms.  (AR 336).  The ALJ assigned little weight to the physical medical source statement because it was inconsistent with the overall record; it was not supported by objective evidence; and it was conclusory without any explanation.  (*Id*. at 28)

Plaintiff argues the ALJ erred because she did not state how P.A. Guzman's statement is inconsistent with Plaintiff's daily activities, and the ALJ did not explain how "other opinions and "the weight of the evidence" did not support P.A. Guzman's assessment (Doc No. 14 at 7-9).

1    Plaintiff incorrectly claims the ALJ erred by not giving germane reasons for rejecting P.A.

2    Guzman's physical medical source statements.  (Doc. No. 14 at 6-9).  The ALJ explained P.A.

3    physical medical source statement conflicted with other evidence such as Plaintiff's daily

4    activities, which included Plaintiff's walking and video game hobby.  (AR 28-29); *See Ford*, 950

5    F.3d at 1155.  The ALJ elaborated that Plaintiff's ability to walk up to six hours conflicted with

6    P.A. Guzman's assessment that Plaintiff had difficulties walking and had a back impairment.

7    (AR 28); *See id*.  Additionally, the ALJ explained that Plaintiff's ability to play video games over

8    long period of times conflicted with P.A. Guzman's assessment that Plaintiff had limitations

9    manipulating with his hands and fingers.  (AR 28); See *id*.  The ALJ also pointed out that P.A.

10   Guzman's physical medical source statement was not supported by any medical findings which

11   would account for why Plaintiff was diagnosed with extreme physical and exertional limitations.

12   *See Ford*, 950.F3d at 1154.  Finally, the ALJ considered the fact that P.A. Guzman failed to

13   explain any of the physical limitations he assessed for Plaintiff.  (AR 28); *see Id*. at 1155.  It is

14   within the ALJ's authority to consider the quality of an explanation when determining the amount

15   of weight to assign to a medical opinion.  *Ford*, 950 F.3d at 1555.  The ALJ did not error by

16   assigning little weight to P.A. Guzman's physical medical source statement.

**c.   Letter Dated March 14, 2018**

17

18         The ALJ referenced P.A. Guzman's letter dated March 14, 2018, acknowledging it

19   provided some background and observations about Plaintiff, but otherwise "little evidentiary

20   value . . . of any medically determinable impairment."  (AR 29-30).  When a physician's report

21   does not assign any specific limitations or opinions in relation to an ability to work, "the ALJ

22   [does] not need to provide 'clear and convincing reasons' for rejecting the report because the ALJ

23   did not reject any of the [report's] conclusions."  *Turner*, 613 F.3d at 1223; see also *Kay v.*

24   *Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985) ("the mere diagnosis of an impairment…is not

25   sufficient to sustain a finding of disability.").

26         The ALJ provided germane reasons for assigning little evidentiary value to P.A.

27   Guzman's letter.  The ALJ explained that she decided to assign little evidentiary value to the

28   letter because the letter did not detail any limitations on Plaintiff's ability to work.  (AR 29-30);

1  *See Turner*, 613 F.3d at 1223.  Furthermore, the ALJ did not need to specify specific reasons to

2  reject any of the conclusions in the letter because the ALJ did not reject the conclusions in the

3  letter that Plaintiff exhibited a low-key demeanor, was soft spoken, is hesitant with conversation

4  because of his fear of making a mistakes or could benefit from a paid work training program.

5  (AR 275); see *Turner*, 613 F.3d at 1223.  Finally, while the letter states Plaintiff is treated for

6  hypertension, hyperlipidemia, asthma, and allergic rhinitis, such diagnoses are not a sufficient

7  reason to find Plaintiff with a disability correlating with each diagnosis.  See *Heckler*, 754 F.2d at

8  1549; see also *Kay*, 754 F.2d at 1549.  The ALJ properly considered the letter.  *See Id*.  Despite

9  offering no evidentiary value, the ALJ explained she was able to use the letter to better

10  understand Plaintiff's background which included Plaintiff being able to at least perform basic

11  work tasks and an inference from the letter that "improvement in [Plaintiff's] ability to sustain

12  work activity to improve knowledge and skills is attainable and not precluded by [Plaintiff's]

13  particular mental profile."  (AR 30).

14      Ultimately, the ALJ gave germane reasons for assigning no weight to P.A. Guzman's

15  mental medical source statement, little weight to P.A. Guzman's physical medical source

16  statement, and nominal weight to P.A. Guzman's letter.

17      **D.  Remedy**

18      Plaintiff requests the Court remand for further proceedings.  (Doc. No. 14 at 14).  The

19  decision to remand for further proceedings is within the discretion of the district court.

20  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  Where there are outstanding issues that

21  must be resolved before a determination can be made, and it is not clear from the record that the

22  ALJ would be required to find a claimant disabled if all the evidence were properly evaluated,

23  remand is appropriate.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman*

24  *v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

25      This Court finds further administrative proceedings are appropriate.  Here, the ALJ

26  improperly considered Plaintiff's symptom claims, which calls into question whether the assessed

27  RFC, and resulting hypothetical propounded to the vocational expert are supported by substantial

28  evidence.  In light of a need to conduct a new sequential analysis, as well as a need to evaluate

Plaintiff's subjective complaints, on remand the ALJ should also consider the third-party statements provided by Ms. Anabel Martinez, and all relevant medical evidence.  If necessary, the ALJ should order additional consultative examinations and, if necessary and/or appropriate, take additional testimony from medical experts.  The ALJ should conduct a new sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all the limitations created by the ALJ.

Accordingly, it is **ORDERED**:

1. Pursuant to sentence four of 42 U.S.C. § 405(g), the Court REVERSES the Commissioner's decision and REMANDS for further proceedings consistent with this order.

2. An application for attorney fees may be filed by separate motion.

3. The Clerk shall terminate any motions and deadlines and close this case.

Dated:   __March 14, 2022__

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

21